Good morning, Your Honors. Susan Nelson on behalf of Brad Thoma. I would like to reserve five minutes of argument, please. We're here today because the City of Spokane terminated a decorated police sergeant who was suffering from the disability of alcoholism. They terminated him under the premise that he might relapse and drink and drive despite driving not being an essential function of his job. Thereafter, two years later, they entered into settlement negotiations. They reached an agreement that they reduced to writing and exchanged between the attorneys wherein he would be reinstated as a detective. The city refused the deal. They did. The city ultimately breached it. So the agreement was actually breached. Our allegations are... You reached an agreement. The lawyers reached an agreement. It was reduced to writing. It was presented to the City Council, which had the legal authority to approve or disapprove of the settlement, correct? Not exactly. So basically, it was reduced to writing in December of 2011 and email correspondence between all parties. And there was no mention at that time that the City Council would be required to approve it. It wasn't until a month and a half later that they said it was just a formality and that the City Council... They anticipated no issues with the City Council's approval. The matter of law, was the city's approval required? No. The city has the... What's your best case or statute that says that? I'm relying upon the city's municipal code that says it's within the purview of the mayor to reinstate people and to control employment. The only authority that the council had pursuant to the municipal code was the authority to approve the settlement payment, which was $290,000. But the reinstatement of Sergeant Tomate's position was within the full purview of the mayor and the mayor alone, because we have a strong mayor. Okay, can we go back a little bit? My understanding is your client was picked up for DUI? That is correct, Mike. You can make life a lot easier if questions could be answered with a yes or no by doing that. Your client was picked up for DUI? Yes. Correct. And he entered into a diversion program, correct? Correct. And an element of that diversion program required a alcohol indicator interlock device on any automobile that he operated, correct? Any personal automobile that he operated. Oh, it said personal? It does. The statute... Is it your client's theory that the city was required to install such a device on patrol cars so he could continue to work? No, Your Honor. What was it? My client's theory is that driving a patrol car is not an essential function of his job. It was the city who brought up the installation of an interlock device on the vehicle and a potential waiver as accommodation. Once they ruled he couldn't perform an essential function. What was his assignment prior to his arrest? He was a sergeant, Your Honor. And what did his duties include? Eighty percent of his duty was administrative functionality. Did his duties include operating a police vehicle? At times, it did. So the But that's not a job. If you look at the job description itself, Your Honor, it doesn't require sergeants to drive vehicles. And the testimony from Interim Chief Stevens states that there are administrative positions for sergeants wherein they do not drive vehicles whatsoever. Is it your position that the city and mayor acted ultra-virus and ultra-virus in disapproving the settlement? The mayor signed off on the settlement agreement, as did the assistant city attorney. It was the City Council who refused to sign off on it and they refused to agree. It came up on a calendar before the City Council, correct? Correct. And your assumption, based on what you've been told by opposing council, was that they would simply review the amount of the settlement, correct? That's correct. Actually, they wound up at the end of the day saying, we don't want to settle at all. Actually, the city attorney advised us that they perceived no issues and it would be signed off on. That sounds consistent with what my question was. Yes. Is it your contention that the City Council was acted unlawfully in refusing to approve the settlement? No, it's our contention that the city had the authority not to approve the funding of the settlement, but that they still had the ability to reinstate Sergeant Thoma to the police force. So it's your position that they were obligated to reinstate him, whether they approved the amount of the settlement or not? Yes, based upon the mayor's signature on the settlement agreement, he had sole authority to promote, to assign, to hire, and to reinstate. The City Council had no authority over that. We have a strong mayor system. The only authority the City Council had was over the funding issue. So because the mayor and the city attorney had already signed and their authority was for reinstatement, he was reinstated at that time. When they thereafter refused to allow him to proceed to work because the council had not approved the funding aspect, that's where they breached the contract. Is the purported agreement an enforceable agreement in other respects before the City Council refuses to authorize it? I believe so, yes, Your Honor. I believe that because the mayor actually signed on it and the city attorney signed on it, that sealed the deal on reinstating Sergeant Thoma to the police department. And the only issue before the City Council was just whether or not they were going to fund the settlement amount of $290,000. And does the agreement expressly say that the reinstatement provision is enforceable even if the City Council doesn't approve it? No, but the agreement contains a severability clause. And the severability clause acts to strip anything that is not legally permissible. The City Council's claim that they, by not signing it, he was not being reinstated exceeded their authority. It was an ultra-virus act and therefore it was an illegal act. And the severability clause saves that portion of the agreement. Thank you. I would also like to point out that the other side in their briefing has argued that Interim Chief Steve, excuse me, Interim Chief Stevens, his testimony is not in the District Court. And I disagree with that based upon Council's own admission during the argument. If you look at SER 80, you'll see that the District Court specifically asked Ms. Mack, so what are you requesting and why? And her response was, I want to make clear that we are not asking to exclude him completely as a witness. We recognize he is a fact witness in this matter by virtue of his position and having participated. So we certainly do not have an issue with him being a fact witness. When you combine Stevens' testimony with Toma's own testimony about the fact that sergeants were not required to drive as an essential function of their job, but indeed there were many ways within which to patrol the city, including by foot, by bicycle, riding as a passenger in a vehicle, Sergeant Toma's not unable to perform the essential functions of his job. If you look at the job description itself, the only qualification or requirement is that he was able to patrol. He was certainly capable of doing that without actually operating a motor vehicle. When you look at whether or not there is indications that he was discriminated against, all you have to look at is that in 2009, two months before Sergeant Toma went into his Loudermill hearing, Carl Thompson was indicted by the federal government for violent crimes. He lost his policing powers. He lost his badge. He lost his uniform. She put him in a purely administrative function and allowed him to control the daily bulletins and the policy and the procedure manual for the police department and kept him employed for over two years until he was convicted in 2011. You're arguing that someone else did something worse and they were treated better? Absolutely. How does that give you a right to your client, a right to relief? Because it's disparate treatment, Your Honor. They're saying specifically that they could not give him a waiver when you talk about the accommodations that the city raised on their own. Chief Kirkpatrick said that she could not sign a waiver allowing Toma to drive, assuming it's an essential function which we dispute, because he might drive intoxicated. So then you look at other individuals in similar circumstances. You look at individuals that do not have a disability who have engaged in criminal conduct, and you have Carl Thompson, federal indictment for violent crimes. Lost his policing powers, lost the ability to perform essential functions pursuant to their own analysis, but he was not fired. He was moved to an administrative position. You look at another detective in Scott Stevens' testimony on ER 276 to 77, and he testifies pursuant to his own knowledge. There was a detective who had MS who was unable to continue driving. What did the city do with him? They moved him to a administrative function and allowed him to continue. There are other officers who had DUIs, who were convicted of DUIs. What did the city do with them? They didn't fire them. They didn't remove them from their positions. They didn't consider them a risk, and when asked why, the answer was they did not claim to be alcoholics. This is direct evidence of discriminatory intent towards individuals who suffer from the disability of alcoholism. Then you go to the whole notion of the due process, another claim in our case. In due process, an individual who has a property interest in his position, which police officers do pursuant to Washington law, is entitled to a fair hearing before being deprived of their property interests in front of an unbiased decision maker. Again, you have Scott Stevens' testimony, I believe it's on ER 277, where he attended meetings that Kirkpatrick made it clear in his belief that there was nothing that Sergeant Toma could do or say that would prevent him from being terminated or demoted. These meetings occurred before the Loudermill hearing in the middle of December of 2009. What happened? Sergeant Toma was terminated. The issue of whether or not there is bias is one for the jury. It's not a determination of fact to be made by the trial court, and the jury is not responsible. We also have several discovery issues that are at hand. We sought disclosure of attorney-client information regarding the steps that the city took in analyzing... All of the discovery disputes either will be moved out by our affirming the summary judgment grant, or if the panel agrees with you and the case is sent back, that's where they'll be resolved. What else do you have? The only issue we have is that they regarded him as disabled. Chief Kirkpatrick didn't. Again, the record is clear there, and here the court erred in taking all of the inferences and weighing it in favor of the moving party, which is the City of Spokane. Toma was actually the non-moving party, and in this case, the judge looked at one document and one document alone, and that was the document that was the 12-30-2009 termination letter, wherein Chief Kirkpatrick said, for the purposes of this situation, I'm assuming you're disabled. In rendering his decision that the chief did not consider or was focused on that. In doing so, he disregarded the evidence that when questioned, why were other officers with DUIs not considered a risk, Chief Kirkpatrick answered, because they didn't claim to be alcoholics. It disregards the fact that she said in the Loudermill hearing, when you learn more about your disease, one of the treatment statements is that alcoholism is cunning. It disregards the fact that on 12-17, after the Loudermill hearing, she sent an email up the chain of command, and in that email, she said, we made an offer of accommodation, a two-year unpaid layoff on the condition that he rehabilitates. All of this evidence is evidence that should have been taken in the light most favorable to Sergeant Toma, and would have allowed him to proceed to the jury with the question as to whether or not he was regarded as disabled, and whether or not adverse action was taken against him because of that perception. I'll reserve the rest for rebuttal. Okay. Thanks, Counsel. Thank you. Is it Mr. Kaye for the City of Spokane? May it please the Court, Kevin Kaye on behalf of the City of Spokane and Ann Kirkpatrick. This case really distills down to whether or not Mr. Toma presented sufficient evidence to defeat summary judgment. The record reflects the district court judges diligently examined all the evidence, provided Toma every opportunity to set forth a prima facie case for his claims, and he failed to do so. Summary judgment was appropriately granted in each instance. Let's talk... The first claim, I think, relates to a theory that we would probably describe as promissory estoppel, right? I mean, the contention on behalf of Sergeant Toma is that they had a deal and were assured that the deal would be approved by city council. It was even signed off on by the mayor, and the city council, in excess of its authority, disapproved the settlement. What's your response? I disagree, Your Honor. Well, I know you do. What's your response? That is not a valid agreement unless and until both the city council and the Human Rights Commission agreed to the document. And is that clear as a matter of law? That is clear as a matter of law, as evidenced by the email chain, ER 255 through 258, where council for Mr. Toma has a back and forth exchange with the city where they are discussing the need for approval by the HRC. And more importantly... Why isn't the statement in the agreement the preliminary paragraph, the introductory paragraph says, this agreement is contingent on approval by the Spokane City Council and will become effective upon approval by the Washington State Human Rights Commission. Actually, Your Honor, that is exactly what I was following up with next. That is the more important issue. It's right there on the face of the document that that is required. Further on in that agreement is a signature line for both the city, the Human Rights Commission, or actually all three, and Mr. Toma. Also looking at supplemental excerpt of a record 259 at Mr. Toma's deposition, he was asked, at the time you signed the settlement agreement, meaning the HRC agreement, did you understand it would not be effective until the HRC approved it? His answer was yes. So he understood that. For them to claim now that there was some binding agreement in promissory estoppel is simply not supported by the facts. Now, after the city council refused to approve the settlement agreement, there was some other... Another agreement was negotiated that... Another agreement was discussed, but it's our position that it was never consummated. And Mr. Toma has not presented evidence to raise a question of fact as to whether that agreement was ever consummated. Fair enough. That's when he agreed to abandon his Human Rights Commission claim. Turning to... And that's correct, Your Honor. That's my recollection. Turning to Mr. Toma's Americans with Disabilities Act claims and his Washington law against discrimination claims, they fail as a matter of law. First and foremost, Mr. Toma has not provided sufficient evidence to raise a question of fact as to whether he's even disabled under the ADA or the ADAA. Now, he claims that he was regarded as disabled. If that's the problem that they wanna proceed under, that's great with the city because that means necessarily there was no failure to accommodate under the ADAA. And that's evidenced by this court's very recent opinion in Taylor v. Renown, where you affirmed the 2014 opinion of the district court, stating that as a matter of law, there is no duty to accommodate in a regarded as case. Turning to the issue of ADA and other ways to prove disability, he can either show that he was substantially limited in one or more major life activities or had a record of such impairment. There's insufficient evidence here. While counsel is correct that pre-ADA cases do not necessarily inform upon the current iteration of the statute, where it does specifically state there is a lesser standard for substantially impairs, it's still important to note that it says substantially impairs because that means it's something more than just minorly impairs. There's got to be some type of actual evidence. Well, alcoholism can impair. Absolutely. But there has to be a substantial impairment on a major life activity. The record here is devoid of any actual evidence on that. The most we have is Mr. Thoma claiming that alcohol affected areas of his life, such as he had trouble sleeping. Okay, that's potentially a major impact. But the conclusory statement that, oh, I had horrendous sleep doesn't show any impact on the nature or extent of the sleep claims and impact. And as the Larkin versus Mefactan school district case, 773 Federal Supplement 2nd 508 indicates at pages 525 to 26, simply asserting that something impairs without providing additional evidence of the actual impairment and how extensive the assessment, ER 122 to 137, it mentions that alcoholism impacted his job. But again, it's a conclusory statement that doesn't say how. Looking at the Washington Law Against Discrimination claims, again, alcoholism is not a per se disability. More importantly, to prove a failure to accommodate claim under Washington Law Against Discrimination, Thoma has to show that a physical abnormality or other impairment limited his ability to perform his job and that the city, upon notice, failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. Council has cited to Banks v. York to say that that is no longer the standard, to imply that it doesn't have to be a medically necessary accommodation. That is simply incorrect. In 2015, Crees v. Washington Spokane Primary Care LLC, 190 Washington Appellate 98, specifically set forth that test. Is this in your brief? It is not in my brief. It's actually a case that council submitted as a supplemental authority to this court, and the standard is set forth right there. That is the applicable standard. There's no dispute that an ignition interlock device has nothing to do with treatment for alcoholism. It's not medically necessary. Therefore, there can be no failure to accommodate under the Washington Law Against Discrimination. Also, council has reiterated today that it's apparently Mr. Thoma's position that driving is not an essential function. Then what exactly was the accommodation that he was required to have in this case? If waiving the IID is only necessary for an essential function for a ADAA claim, if it's not an essential function, why does he need a waiver? He doesn't. Council and Mr. Thoma have repeatedly argued they've shown evidence of jobs that were available to him. That's not true. The there were available positions generally. There's no specific identification of any open job at the time that Mr. Thoma was terminated. And nowhere in the evidence has there been presented any indication whatsoever that that's the case. Further, even if Mr. Thoma was somewhat terminated related to his alcohol misconduct, that's not discrimination. There are sufficient number of cases throughout the country that say that alcohol related misconduct can be disciplined. They're set forth in our brief. They include Brown v. Lucky Store Inc. 246 F. 3rd 1182. They include a case that council cited in their reply brief, Dark v. Curry County 451 F. 3rd 1078, where it says one of the exceptions is the ADA's explicit authorization for discharge on the basis of alcoholism and illegal drug use. And it is distinguishing between the normal perception that conduct related to a disability is not a separate basis for termination. It's actually considered to be part of the disability. Well, that's not the case with alcoholism. Next, turning to Mr. Thoma's retaliation and disparate treatment claims. First, the disparate treatment. Pointing to a gentleman who was kept on the force when he was accused of a violent crime that is not a DUI matter with an ignition interlock requirement doesn't at all show pretext. And more Barrington or Ms. Ross, Mr. Barrington, his DUI was dismissed. He was not required to have an ignition as would Mr. Sergeant Thomas once he completed the period under the diversion agreement, right? That is absolutely correct. But during the period was okay for the city council to pause based on an accusation until it went further, but not in this situation. It wasn't just an accusation. Mr. Thoma had affirmatively petitioned for the first time. It had been accepted case. Your opposing counsel is comparing it to someone who was accused of a violent crime. He was accused. And I would say with Mr. Thoma, had he not petitioned for deferred prosecution and had an ignition interlock device requirement, it would have been a different case as evidenced by Barrington and Amy Ross. Amy Ross, um, as it set forth in ER 97 to 99 also had a DUI and was temporarily suspended, not suspended, but allowed to take some time off, um, to keep her benefits. But again, no ignition interlock device. That is the key difference. Yeah. Uh, retaliation. There's zero evidence of retaliation in this case in order to show retaliation. Uh, I think we know what you have to prove. Okay. Your position is they didn't know. Council asserts and Thomas asserts that the retaliation is present because excuse me, because the evidence shows that Mr Tomo was terminated within days or within hours of asking for more time. That's that's simply not the case. Actually, looking at the record, Mr Tomo at his louder mill hearing on December 17th, 2009 was offered, uh, a layoff and that's er 1 68 to 1 93. In course of discussing the offer, he requested time to consider the offer. You are 1 92. He was initially given till December 18th to make that decision. Again, you're 1 92. He subsequently was given until December 21st, 2009 at three o'clock. He was not terminated on December 18th, like council has argued in their briefing. And that's er 3 32 in the year 348 to 349. When Tomo rejected the city's offer, he was finally terminated on December 1st, 2009. And that's er 3 40. There's no indication that he was also distinguishing factor. The only right he had exercised, he'd exercised prior to the layoff and the termination. It was filing his HRC complaint, which he'd already done. So by the time the layoff status was offered by the time he rejected it, but by the time it was premised on settling the HRC claim, that was a settlement of a claim. It was not waving a right. There is zero evidence of retaliation. There's also zero evidence that contrary to Tomo's argument that Chief Kirkpatrick considered Mr Tomo to be an alcoholic. Fact er 3 26 states the fact that you may be an alcoholic. These are all statements by Miss Kirkpatrick. Later on, er 3 31. She stated in part and part you and your representatives requested accommodation accommodation for your alleged disability of alcoholism. I have assumed that you do suffer from alcoholism. And then going back to the statement where it's argued that Chief Kirkpatrick admitted that, well, the difference between Tomo and the other D U I people is that they did not admit to be alcoholics. The full statement goes on to say that he was actually that she was actually concerned about the risk of the I. I. D. Says alcoholic first. If you read the entire quote, it's ignition interlock device. So unless the court has additional questions for me, I believe I will go ahead and rest of my briefs at this time. Thank you. Thank you very much. There's a lot to worry about here. So bear with me if I jump around from topic to topic. But in talking about Scott Stevens testimony regarding other available administrative positions, if you look at your 2 76 paragraphing, his quote is, I specifically recall and am aware of the fact that there were always administrative positions open for officers who are available to perform them. There's no equivocation there. That is a direct statement from Stevens that there were positions open. They were available for officers who could perform them. Let's go back to the settlement agreement. It was a written settlement agreement, correct? So was there a written settlement agreement? Multiple ones? Yes. Was there a written settlement agreement that was presented to the City Council? Yes. Did it provide for a signature by the City Council? Yes. And by the Human Rights Commission? Yes. Why didn't you tell us that in your opening argument? It's your honor. I didn't not tell you that in the opening argument. I was focusing told us that you were told and assured and that the agreement only had a signature line for the mayor and that they were simply going to approve the amount or Laura or raise it or whatever. And in any event, they were going to approve his reinstatement. You said nothing about the fact that the agreement had a signature line for the City Council and the Human Rights Commission. Your honor, what I was trying to convey to you is that this settlement agreement had been reached and recorded on December 11th of 2011. The agreement that was presented to the City Council, I did represent to you that they were seeking City Council approval. I wasn't intending to hide the fact that there was a signature line for them. I was arguing that because the City Council only has authority for funding the settlement, that's what the signature line was for, not for the reinstatement portion of it. What does it mean by this agreement is contingent? This agreement, that's just the preamble. And if you look at the parole evidence rule, our argument is that you can look to these outside documents and this all stems... But why can't we say it's contingent? Because it was contingent on their approval for the funding, not contingent on their approval for the reinstatement of it. Is that what it says? No, Your Honor, it says it's contingent upon. But our interpretation of it is that this is contingent upon their approval for the funding. The city attorney had represented to us, to the client, that this was just a formality, they did not anticipate any issues, and that's in writing and it's in the record. This is where our belief came from, that the issues that were being resolved with this agreement was the issue of funding by the City Council, the issue of reinstatement by the mayor, those are the sole authorities that they have pursuant to the municipal code. The City Council doesn't have authority to approve reinstatement for employment or termination. Why is their signature agreement on the line? For the purpose of the funding itself, Your In our position, the preamble was just setting forth this part of it is contingent. I'm not trying to be argumentative here, I'm trying to just represent that when all of this came down... This agreement is contingent. And I understand that, and I understand that that's the language. But when we were given the document, we were given it with the understanding that it was just a formality, and it was the funding. We were... Your client acknowledged these conditions? He acknowledged... Your opposing counsel represents? Opposing counsel, when he was deposed, they presented him the agreement, they asked him the question, and yes, he acknowledged that it was contingent upon that. Upon the approval by the mayor and the City Council? Yes. And the Human Rights Commission? I would have to look at the record for the latter part. At least by the City Council and the mayor? Correct. And he understood that? He understood that at that time, yes. But he also understood that there was an agreement that had been reached in December, and he relied upon that in his conduct going forward. All of this came about due to various delays in getting the agreement drafted and getting it signed. There was no understanding by our client that this was not going to go through. He believed that it was a done deal and that he was being reinstated. That was his belief? Correct. Not recited within the four corners of the city? Correct. So then, I want to go back to the issue of retaliation. One of the things that opposing counsel glossed over in reciting the facts is the sequence of events. So on December 9th, our client received his Loudermill Notice, his intent to terminate. On December 11th, he filed a complaint with Human Rights Commission. On December 17th, he had his Loudermill hearing. It was during the Loudermill hearing that Chief Kirkpatrick, at the end, represented an offer to accommodate pursuant to her grace, wherein she said he would be placed in an unpaid layoff and he would be reinstated after two years. It was then that she said it had not been reduced to writing, and she represented to him that he could have time that evening to review it. Hillary McClure, who was the attorney for the guild, asked that it be reduced to was, they asked until the next day to review it and consider the options. Sergeant Thoma then had Hillary McClure email and ask for additional time till Monday, and that email occurred on the 17th, and he wanted to know if he could seek advice of his civil attorneys in that matter, because they were asking him to give up all of his claims, not just the HRC claims, but his legal claims as well. In response to that, on 12-17, on ER 444, I'm sorry, I have the wrong document here. At ER 348, at 154 p.m., Kirkpatrick responded, here's my compromise, effective today, Thoma is not an employee of the police department. It was within hours of requesting additional time to discuss this matter with his civil attorneys, and that's at ER 349. In the agreement that you presented to Sergeant Thoma for his consideration, one of the conditions is that he not file legal challenges. He wants to be able to discuss this with his attorney. Within hours, Kirkpatrick responded, here's my compromise, effective immediately, he is not, or effective today, Thoma is not an employee of the police department. That constitutes unlawful termination. She put him in the position where he had to make a Hobson's Choice, pursue his civil legal claims, or face termination. The actual processing didn't occur until Monday, that is true, when HR processed the termination paperwork, but he was removed from the police department that Friday after he requested additional time to discuss his civil claims with his civil attorney. Okay, I think I want to thank both counsel for their spirited argument. The arguments and case of Thoma v. City of Spokane shall now be submitted. The court will take a 10 or 15 minute recess, and then we'll come back for the Zazali case.
judges: Hawkins, Gould, Paez